IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3139-FL

HUGO GONZALEZ, as personal
representative of the estate of Ricardo
Arthur Gonzalez,

    Plaintiff,

  v.

ADAM MATTHEW BENNETT,
individually and in his official capacity as
Pamlico County detention officer;
THEODORE BENJAMIN LEE,
individually and in his official capacity as
Pamlico County detention officer;
ANTHONY COLLINS, individually and in
his official capacity as supervisor at the
Pamlico County detention center; ROLAND
J. FIELDER, individually and in his official
capacity as Pamlico County investigator;
JARON A. GIBBS, individually and in his
official capacity as Pamlico County
detention officer; ALEXANDER G.
COVINGTON, individually and in his
official capacity as Pamlico County
Investigator; JEREMY S. WILKINSON,
individually and in his official capacity as
Pamlico County sergeant; KENT T.
HOLTBERG, individually and in his
official capacity as Pamlico County
investigator; ALBERT SUMMERLIN,
individually and in his official capacity as
Pamlico County sergeant; JOSEPH R.
DUNNEBACKE, individually and in his
official capacity as Pamlico County deputy;
CHRIS DAVIS, individually and in his
official capacity as Sheriff of Pamlico
County; PAMLICO COUNTY SHERIFF'S
OFFICE, and PAMLICO COUNTY,
NORTH CAROLINA,

    Defendants.

            ORDER

This matter is before the court on motion to dismiss (DE 39) made by defendants Adam Matthew Bennett ("Bennett"), solely in his official capacity, Theodore Benjamin Lee ("Lee"), solely in his official capacity, Anthony Collins ("Collins"), Roland J. Fielder ("Fielder"), Jaron A. Gibbs ("Gibbs"), Alexander G. Covington ("Covington"), Jeremy S. Wilkinson ("Wilkinson"), Kent T. Holtberg ("Holtberg"), Albert Summerlin ("Summerlin"), Joseph R. Dunnebacke ("Dunnebacke"), Chris Davis ("Davis"), Pamlico County Sheriff's Office ("PCSO") and Pamlico County (collectively, "moving defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the court are separate motions to dismiss by defendants Pamlico County (DE 37) and PCSO (DE 35). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, as personal representative of the estate of Ricardo Arthur Gonzalez ("Gonzalez"), commenced this action by filing complaint May 22, 2024, asserting constitutional and state law claims related to Gonzalez's suicide at the Pamlico County Detention Center. In summary, plaintiff alleges defendants concealed Gonzalez's risk of suicide from medical providers and other detention officers, failed to screen him for suicide risk upon admission to the detention center, failed to provide adequate supervision or mental health treatment after his admission, and that defendant Bennett told Gonzalez he was worthless and encouraged him to commit suicide. Defendants, sued in their individual and official capacities, are the Sheriff of Pamlico County (Davis), and Pamlico County deputy sheriffs and corrections officers. Plaintiff also brings claims

against defendants Pamlico County and the PCSO as entities. As relief, plaintiff seeks compensatory, punitive, and treble damages.

Plaintiff asserts 15 separate claims for relief, some of which are not challenged in the instant motions. The legal claims and defendants against whom each claim is asserted are set forth in the following table:

| Claim Number | Substantive Claim | Defendants |
|---|---|---|
| First Claim | Injury to Prisoner, N.C. Gen. Stat. § 162-55 | All defendants |
| Second Claim | Eighth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, based on each individual officer's alleged role in failing to prevent or respond to plaintiff's suicide | Individual defendants |
| Third Claim | Failure to properly assess and screen for suicide risk, in violation of the Eighth and Fourteenth Amendments | All defendants |
| Fourth Claim | Failure to provide medical care and treatment, in violation of the Eighth and Fourteenth Amendments | All defendants |
| Fifth Claim | Failure to train and supervise subordinate officers, in violation of the Eighth and Fourteenth Amendment | Defendants Davis and Collins |
| Sixth Claim | Failure to provide adequate staffing and resources, in violation of the Eighth and Fourteenth Amendments | Defendants Davis and PCSO |
| Seventh Claim | Eighth and Fourteenth Amendment violations against defendant Bennett for disregarding the risk of suicide and encouraging Gonzalez to kill himself | Defendant Bennett |
| Eighth Claim | Deliberate indifference to Gonzalez's health care needs, in violation of the Eighth and Fourteenth Amendments | Defendants Fielder, Covington, Wilkinson, Holtberg, Summerlin, and Dunnebacke |

| Claim Number | Substantive Claim | Defendants |
|---|---|---|
| Ninth Claim | Eighth and Fourteenth Amendment claim against defendant Pamlico County, based on alleged unconstitutional policies and practices | Pamlico County |
| Tenth Claim | Negligence | Pamlico County |
| Eleventh Claim | Gross Negligence | Individual defendants |
| Twelfth Claim | Imputed negligence to the employer of the individual officers | Pamlico County and PCSO |
| Thirteenth Claim | North Carolina constitutional violations | All defendants |
| Fourteenth Claim | Wrongful death, N.C. Gen. Stat. § 28A-18-2[1] | All defendants |
| Fifteenth Claim | Punitive Damages | All defendants |

The pending motions to dismiss may be summarized as follows. Defendant PCSO moves to dismiss all claims asserted against it, arguing it is not an entity capable of being sued under North Carolina law or § 1983. Plaintiff does not oppose this motion and concedes that the PCSO is not a proper party to this suit.

Defendant Pamlico County moves to dismiss the majority of the claims against it, arguing primarily that under North Carolina law the sheriff's office alone has supervisory and management responsibility for the detention center. By separate motion, moving defendants seek dismissal of plaintiff's common law tort claims for negligence, imputed negligence, and gross negligence, arguing that they are subsumed under the wrongful death claim. Finally, moving defendants

---

[1] Plaintiff cites to the predecessor version of this statute in the complaint, N.C. Gen. Stat. § 28-174.

challenge plaintiff's direct claim under the North Carolina Constitution, arguing it is barred where plaintiff has adequate remedy under North Carolina's wrongful death statute. Plaintiff responded in opposition to these motions.

Plaintiff filed the instant motion to amend the complaint while briefing was underway on the foregoing motions to dismiss. Plaintiff requests leave to file amended complaint that removes PCSO as a defendant and replaces that entity with defendant Davis in his official capacity, to clarify the capacity in which individual defendants are sued for each claim, to add defendant Davis in his official capacity to claims 9, 10, and 13, and to add a new claim against Western Surety and defendant Davis, for suit on the sheriff's bond under N.C. Gen. Stat. § 58-76-5. While defendants do not oppose plaintiff's motion as to these proposed amendments, moving defendants argue the motion should be denied as futile as to the claims challenged in their pending motions to dismiss that are carried forward in the proposed amended complaint.

## STATEMENT OF FACTS

Plaintiff alleges the following facts in the complaint. As a young adult, Gonzalez suffered from substance abuse issues and suicidal ideations, and he attempted suicide on numerous occasions. (Compl. (DE 1) ¶ 43). For example, on August 11, 2019, Gonzalez was found unconscious due to a heroin overdose that may have been a suicide attempt. (Id. ¶ 49). In connection with this incident, emergency medical services ("EMS") technicians documented that PCSO officers knew Gonzalez because of his history of drug overdoses. (See id.).

On April 15, 2022, PCSO officers responded to a report that Gonzalez was threatening suicide and that he had overdosed. (Id. ¶ 50). Defendant Dunnebacke and another PCSO officer administered Narcan, a medication that can reverse the effects of opiates, and plaintiff was revived. (See id. ¶ 51). At the scene, defendant Dunnebacke told defendant Covington that Gonzalez had

attempted suicide. (Id. ¶ 52). Subsequently, Gonzalez was charged with possession of a schedule II controlled substance related to this incident. (Id.).

Four days later, on April 19, 2022, defendants Fielder, Covington, and Wilkinson responded to another drug overdose call involving Gonzalez. (Id. ¶ 54–59). At the scene, defendants Covington and Fielder found one or more suicide notes on plaintiff's bed where he had overdosed, and they later told defendant Wilkinson about the notes. (See id. ¶¶ 58, 61). Defendant Fielder administered Narcan, and plaintiff again was revived. (Id. ¶ 55). Defendant Holtberg, a PCSO investigator who had also arrived on the scene, transported Gonzalez to the hospital. (See id. ¶ 64).

At the hospital, medical staff initially documented that Gonzalez presented as high risk for suicide, and records indicated he was found with a suicide note. (Id. ¶¶ 65–66). PCSO officers interrogated Gonzalez at the hospital while he remained under the influence of opiates. (Id. ¶ 68). After this interrogation, Gonzalez began denying that he attempted suicide, and stated that the suicide note was old. (Id. ¶ 69). "By this point, however, with [Gonzalez's] history, and after having been interrogated by PCSO investigators, it should have been apparent that he was saying what he thought he needed to say in order to be released from the hospital." (Id.). For example, during a subsequent meeting with the treating physician, Gonzalez denied writing a suicide note. (Id. ¶ 70).

The treating physician also discussed the suicide note with PCSO investigators, who told her that "there is no physical evidence of the note." (Id. ¶ 72). According to plaintiff, defendants Holtberg, Fielder, Covington, Summerlin, and Wilkinson concealed the suicide note and Gonzalez's history of suicide attempts from the treating physician and other medical providers at the hospital. (Id. ¶¶ 74–75). They concealed this information because they wanted to take

6

Gonzalez into sheriff's office custody in order to file criminal drug charges against him and continue their interrogation.[2] (Id. ¶¶ 76, 79). They also "did not want [Gonzalez] to be tied up at the hospital undergoing further psychological assessments and treatment, and they did not want [Gonzalez] to be provided the extra attention and care that would be afforded him if he was determined to be a suicide risk." (Id. ¶ 79). Notably, the suicide notes found on Gonzalez's bed during the April 19 incident were not retained by PCSO officers, and plaintiff alleges unidentified officers destroyed them. (Id. ¶ 77).

In light of the concealment of the notes and Gonzalez's "adamant" denial of homicidal and suicidal ideations, the medical staff determined further psychological assessment or treatment was not necessary. (Id. ¶ 73). In the discharge paperwork, the treating physician wrote: "he is again adamantly denying any suicidal or homicidal ideation [and] there is no physical evidence of this reported suicide note." (Id.). As a result, Gonzalez was discharged to the custody of the PCSO. (Id. ¶ 73, 80).

Upon discharge from the hospital,[3] defendant Holtberg transported plaintiff to the Pamlico County detention center. (Id. ¶ 80). Defendants Summerlin and Fielder conducted another interrogation at the detention center regarding Gonzalez's drug activities. (See id.). During this interrogation, Gonzalez identified his drug supplier and stated he was extremely fearful of him. (Id.). Gonzalez stated that if he went to prison, the supplier would have him killed. (Id.). As a result, the individual defendants "were aware that [Gonzalez] had named his supplier and that he

---

[2]     Plaintiff does not identify the subject matter of the hospital interrogation in the complaint, but in briefing on the instant motions plaintiff states that PCSO officers were interrogating Gonzalez about his drug activities. (Pl's Resp. (DE 50) at 5).

[3]     The date of discharge is not alleged in the complaint, but in briefing plaintiff states that Gonzalez was released the same day, April 19, 2022. (Pl's Resp. (DE 50) at 6).

was fearful of being killed in prison." (Id.).

Following this interrogation, Gonzalez was arrested on drug charges and probation violations and he was taken before a magistrate judge. (Id. ¶ 81). The magistrate judge imposed a $1.5 million secured bond, which Gonzalez could not afford, and he was therefore detained at the detention center. (Id.).

At this time, defendants Dunnebacke, Fielder, Covington, Wilkinson, Summerlin, and Holtberg were aware of Gonzalez's recent suicide attempts, the suicide notes, and that the current risk of suicide remained high. (See id. ¶ 82). Nonetheless, these defendants failed to disclose this information to healthcare providers or other intake staff at the detention center. (Id.). They elected not to disclose the suicide risk due to the increased burden of placing detainees on suicide precautions. (Id.).

At the detention facility, defendant Gibbs was responsible for Gonzalez's intake processing, with assistance from defendants Bennett, Lee, and Collins. (Id. ¶ 84). These defendants also were aware, or should have been aware, of plaintiff's prior suicide attempts, but they failed to screen Gonzalez for suicide risk, and he was placed in a standard cell without any suicide precautions. (Id. ¶¶ 86–91). In addition, Gonzalez's cell was located behind a staircase and metal columns, requiring detention officers to go out of their way to check the cell during rounds. (Id. ¶¶ 87–90).

Gonzalez hung himself on the night of June 3-4, 2022, using a noose constructed from bedding sheets. (Id. ¶¶ 92, 102–106). Prior to the suicide that evening, some detainees heard defendant Bennett talking to Gonzalez in a loud, abusive manner. (See id. ¶ 97). Defendants Bennett and Lee failed to make all their required rounds over the nightshift, checking Gonzalez's cell only four times when detention center policy requires safety checks two times every sixty

8

minutes at irregular intervals.  (Id. ¶¶ 96).  During the last known safety check at approximately 3:11 a.m., defendant Lee noticed that Gonzalez had hung a sheet from the top bunk to the floor, which completely covered him on the bottom bunk.  (Id. ¶ 98).  Although this was against detention center policy and despite Gonzalez's risk of suicide, defendant Lee did not enter the cell or otherwise attempt to confirm that Gonzalez was safe.  (Id.).

No officer performed any further safety checks that evening, and Gonzalez was discovered deceased when the morning shift officers arrived.  (Id. ¶¶ 99–106).  Gonzalez left two handwritten notes, and in one of them he alleged safety rounds were not made and defendant Bennett told him he was worthless and not meant to live anymore.  (Id. ¶ 108).  During the ensuing investigation, defendant Bennett denied telling Gonzalez he was worthless or to kill himself, but he acknowledged that Gonzalez received "negative attention" from him.  (Id. ¶ 112).  Defendant Bennett also acknowledged that detention center policy and North Carolina law required safety checks twice every hour.  (Id. ¶ 110).  He stated detention officers "had trouble making their mandated rounds because there was not adequate staffing."  (Id.).

## COURT'S DISCUSSION

A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[4]

When presented with a motion to amend, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be allowed "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep' t of Transportation, 914 F.3d 213, 228 (4th Cir. 2019); see In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny.").

B.     Analysis

1.     PCSO's motion to dismiss

As noted above, plaintiff concedes that PCSO is not a proper defendant in this action and should be replaced by defendant Davis, the Pamlico County Sheriff, in his official capacity. (DE 49 at 3); see also Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017) (holding that North Carolina police departments are not subject to suit under § 1983); Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008). Accordingly, PCSO's motion to dismiss is granted in its entirety and plaintiff's motion to amend is granted to the extent plaintiff seeks to add defendant Davis in his official capacity as the proper defendant for all claims asserted against PCSO.

---

[4]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

2.      Pamlico County's motion dismiss

Defendant Pamlico County argues that pursuant to North Carolina law it is not responsible for operating the Pamlico County detention center, that employment decisions are not made by the county, and that it has no supervisory role over any of the detention center employees.  (Def. Pamlico Cnty. Mem. (DE 50) at 13).  On the basis thereof, defendant Pamlico County requests that court dismiss most claims asserted against it.

For § 1983 claims, a county may only be held liable for acts for which it has "final policymaking authority."  City of St. Louis v. Proprotnik, 485 U.S. 112, 123 (1988).  Whether a county or county official has final policymaking authority in a specific area "is a question of state law."  Proprotnik, 485 U.S. at 124.  The key inquiry in determining whether a county may be liable for a sheriff's actions is how state law allocates power and responsibility. McMillian v. Monroe County, Ala., 520 U.S. 781, 786 (1997); Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000).

As a general proposition, North Carolina sheriffs possess primary authority for operating the county detention centers, including all employment decisions, and in most circumstances the sheriff has final policymaking authority as to the jail.  See N.C. Gen. Stat. § 162-22 ("The sheriff shall have the care and custody of the jail in his county, and shall be, or appoint, the keeper thereof."); N.C. Gen. Stat. § 153A-103 (providing "[e]ach sheriff . . . elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office"); Young v. Bailey, 368 N.C. 665, 669 (2016) (explaining North Carolina's Constitution provides for separate office of the sheriff, who is "alone responsible for carrying out his or her official duties" and emphasizing "the distinct demarcation between county government and the office of the sheriff").  Moreover, the North Carolina Supreme Court has held directly that "a deputy sheriff or employee of a sheriff's office is not a county employee."  Young, 368 N.C. at 670.  As a result, plaintiff cannot assert state

11

law or § 1983 claims against defendant Pamlico County premised on allegations that the county has an employment relationship with or supervisory authority over employees of sheriff's office. See Young, 368 N.C. at 669–70; Knight, 214 F.3d at 552–53 (affirming grant of summary judgment to North Carolina county in § 1983 action because the sheriff "had exclusive responsibility for discharging" the plaintiff/former employee).

Plaintiff, however, identifies an exception to this rule. (Pl's Resp. (DE 50) at 11–13, 15). Pursuant to N.C. Gen. Stat. § 153A-225, "[e]ach unit that operates a local confinement facility shall develop a plan for providing for medical care for prisoners in the facility." The term "unit" means "a county or city." N.C. Gen. Stat § 153A-217(7). The plan "shall be designed to protect the health and welfare of the prisoners and to avoid the spread of contagious disease [and] shall provide for medical supervision of prisoners and emergency medical care for prisoners to the extent necessary for their health and welfare." N.C. Gen. Stat. § 153A-225(a)(1)-(2). The county must develop the plan "in consultation with appropriate local officials and organizations, including the sheriff, the county physician, the local or district health director [and others]." Id. § 153A-225(a). Thus, North Carolina law provides that the county may have some involvement developing a plan for medical care at the detention center, assuming the county "operates a local confinement facility." See N.C. Gen. Stat. § 153A-225; see also Stockton v. Wake County, 173 F. Supp. 292, 303 (E.D.N.C. 2016); Vaught v. Ingram, No. 5:10-CT-3009-FL, 2011 WL 761482, at *3 (E.D.N.C. Feb. 24, 2011).

Primarily on this basis, plaintiff argues that dismissal of the county under Rule 12(b)(6) is premature, given that the precise nature of the relationship between defendant Pamlico County and the detention center has not been ascertained through discovery, including the county's involvement, if any, with policies for providing medical care. (Pl's Resp. (DE 50) at 11–16). For

its part, defendant Pamlico County concedes that "any claims against [defendant] Pamlico County premised upon plaintiff's allegations that Pamlico County did not develop an adequate plan to provide medical care for [detainees] in the Pamlico County Detention Center pursuant to [N.C. Gen. Stat. § 153A-225(a)] survive dismissal at this time." (Def. Pamlico Cnty. Reply (DE 53) at 9).[5]

    a.    Claims against defendant Pamlico County that survive motion to dismiss

As set forth above, plaintiff asserts the following claims against defendant Pamlico County: 1) state law claim for injury to prisoner under N.C. Gen. Stat. § 162-55 (first claim); 2) federal constitutional violations under § 1983 (third claim); 3) Eighth Amendment claim for failure to provide medical care under § 1983 (fourth claim); 4) federal constitutional violations under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (ninth claim); 5) state law claim for negligence (tenth claim); 6) state law claim for imputed negligence (eleventh claim); 7) violations of the North Carolina Constitution (thirteenth claim); and 8) wrongful death claim pursuant to N.C. Gen. Stat. § 28A-18-2 (fourteenth claim). (Compl. (DE 1) ¶¶ 122–31, 139–50, 151–63, 194–204, 205–09, 214–218, 219–222, 223–27; Proposed Am. Compl. (DE 47-1) ¶¶ 124–33, 141–52, 153–165, 198–208, 209–213, 225–228, 229–32). In light of defendant Pamlico County's concession that claims premised on development of the detention center's medical plan should proceed, the court will deny the motion to dismiss as to portions of plaintiff's first, ninth, and fourteenth claims for relief.

In the first claim for injury to a prisoner under N.C. Gen. Stat. § 162-55, plaintiff alleges directly that the county failed to develop a medical plan and suicide watch plan for pretrial detainees. (Compl. (DE 1) ¶ 123(k), (q)); Proposed Am. Compl. (DE 47-1) ¶ 125(k), (q)).

---

[5]    Defendant Pamlico County does not identify the precise claims to which this concession applies. As set forth below, the court concludes that portions of the first, ninth, and fourteenth claims shall proceed on the basis of the allegations regarding the medical plan.

Likewise, in portions of the tenth claim, which is subsumed under the fourteenth claim for wrongful death,[6] plaintiff alleges that defendant Pamlico County was negligent by "fail[ing] to ensure that [defendant] Davis and PCSO had established reasonable and appropriate policies" to protect Gonzalez from the risk of suicide. (Compl. (DE 1) ¶ 208(a), (d), (h); Proposed Am. Compl. (DE 47-1) ¶ 212(a), (d), (h)). By statute, defendant Pamlico County was responsible for developing an adequate medical plan for detainees' health and wellbeing, and so these claims survive the instant motion to dismiss. See N.C. Gen. Stat. § 153A-225; see also Stockton, 173 F. Supp. at 303; Vaught, 2011 WL 761482, at *3.

The ninth claim is based on alleged constitutional violations under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), in which a county may be liable for unconstitutional policies, such as the failure to develop an appropriate medical plan for pretrial detainees and other inmates. See id. at 690–91; Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Although plaintiff does not use the term "medical plan" directly in this claim, he does allege that defendant Pamlico County "failed to implement protocols . . . in the proper way to transfer arrested suspects who suffered from mental health conditions." (See Compl. (DE 1) ¶ 197(a); Proposed Am. Compl. (DE 47-1) ¶ 201(a)). Accordingly, this portion of the ninth claims also survives Rule 12(b)(6) scrutiny. (Def. Pamlico Cnty. Reply (DE 53) at 9).

b.    Claims against defendant Pamlico County that are dismissed

The court next turns to plaintiff's remaining allegations against the county that are not premised on the detention center's written medical plan. Within the ninth claim, plaintiff alleges that defendant Pamlico County "failed to adequately train, supervise, and control [PCSO employees]" in various ways that caused Gonzalez's suicide. (Compl. (DE 1) ¶ 197(a)-(c), (g)-

---

[6]    The interplay between the common law negligence claims and the wrongful death claim is addressed further below.

14

(h), (m); Proposed Am. Compl. (DE 47-1) ¶ 201(a)-(c), (g)-(h), (m)).  Plaintiff further alleges that defendant Pamlico County "condoned and tacitly encouraged" PCSO officers to violate policies and procedures for screening and monitoring detainees who are suicidal, to use insulting language toward detainees, and to otherwise violate the rights of detainees with impunity.  (Compl. (DE 1) ¶ 197(d)-(f), (i), (l); Proposed Am. Compl. (DE 47-1) ¶ 201(d)-(f), (i), (l)).  Finally, defendant Pamlico County allegedly hired and retained detention officers who had demonstrable propensities for using excessive force, violence, dishonesty, and other misconduct, and it failed to adequately discipline or retrain officers involved in misconduct.  (Compl. (DE 1) ¶ 197(j)-(k); Proposed Am. Compl. (DE 47-1) ¶ 201(j)-(k)).

The court agrees that these subparts of the ninth claim fail as a matter of law as to defendant Pamlico County.[7]  As set forth above, under North Carolina law "a county government lacks hiring, supervisory, and firing authority over deputy sheriffs."  Young, 368 N.C. at 669.  Accordingly, defendant Pamlico County could not have been responsible for the failure to train or supervise allegations levied in the ninth claim.  See Knight, 214 F.3d at 552–53.

Plaintiff acknowledges this body of law, but he argues that the court must accept his conclusory allegations suggesting the county, in defiance of North Carolina law, has supervisory and hiring authority over the individual defendants and other employees of the detention center.  (See Pl's Resp. (DE 10) at 10–11 (citing Compl. (DE 1) ¶¶ 18, 126–27, 136, 198–202, 206, 215); see also Proposed Am. Compl. (DE 47-1) ¶¶ 20, 128–29, 138, 201–04, 210, 226).  But in light of governing North Carolina law, and in the absence of allegations that the county ignored this law, plaintiff's allegations suggesting the individual defendants and other sheriff's deputies were

---

[7]	In his proposed amended complaint, plaintiff asserts this claim also against the sheriff of Pamlico County in his official capacity, and moving defendants do not challenge the ninth claim as to this defendant.  (Proposed Am. Compl. (DE 47-1) ¶¶ 3, 198–208; Moving Defs' Resp. (DE 54)).

"employees or agents of Pamlico County" are implausible legal conclusions that need not be credited on a motion to dismiss. See Young, 368 N.C. at 669–70 (holding that the "sheriff's office is not a program or department of a county and . . . a deputy sheriff or employee of a sheriff's office is not a county employee"); Nemet Chevrolet, 591 F.3d at 255 (explaining the court need not consider "legal conclusions" or "bare assertions devoid of further factual enhancement" on a motion to dismiss).

In his third and fourth claims, plaintiff asserts that defendants collectively violated Gonzalez's federal constitutional rights essentially by failing to provide medical care or otherwise ensure that the risk of suicide was managed appropriately. (Compl. (DE 1) ¶¶ 139–50, 151–63; Proposed Am. Compl. (DE 47-1) ¶¶ 141–52, 153–165). These claims fail as to defendant Pamlico County where "vicarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff [therefore] must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Within the third and fourth claims, plaintiff fails to offer factual allegations showing that defendant Pamlico County, through its own individual actions, was responsible for Gonzalez's death. (See Compl. (DE 1) ¶¶ 139–50, 151–63; Proposed Am. Compl. (DE 47-1) ¶¶ 141–52, 153–165). For example, plaintiff does not explain how the county can have direct personal "knowledge" of Gonzalez's risk for suicide and fail to respond. (Compl. (DE 1) ¶¶ 143–45, 155–59; Proposed Am. Compl. (DE 47-1) ¶¶ 145–47, 157–61).

Plaintiff does allege in conclusory fashion that defendants collectively were "acting pursuant to local custom, policy or practice in their actions pertaining to [Gonzalez]" in the third and fourth claims. (Compl. (DE 1) ¶¶ 142, 154; Proposed Am. Compl. (DE 47-1) ¶¶ 144, 156). But this assertion does not standing alone establish a claim for entity liability under Monell and its

16

progeny.  See 436 U.S. at 690–91; Lytle, 326 F.3d at 471.  In any event, plaintiff separately alleges claim for Monell liability in his ninth claim for relief premised on the county's failure to provide adequate medical care, and so these allegations are covered specifically in that claim.  Accordingly, defendant Pamlico County's motion to dismiss is granted as to the third and fourth claims.[8]

Turning next to the remainder of the tenth claim,[9] plaintiff brings common law negligence claim against defendant Pamlico County.  (Compl. (DE 1) ¶¶ 205–209; Proposed Am. Compl. (DE 47-1) ¶¶ 209–213).[10]  For the same reasons discussed above, defendant Pamlico County had no responsibility for training, supervising, hiring, or terminating employment of any sheriff's office employees.  See Young, 368 N.C. at 669–70; Knight, 214 F.3d at 552–53.  Accordingly, the portions of the tenth claim that allege defendant Pamlico County was negligent by failing to provide these functions are dismissed.  The tenth claim also is dismissed to the extent it is asserted against defendant Pamlico County on a theory of respondeat superior where the county was not the employer of the individual defendants.  See Tomlinson v. Sharpe, 226 N.C. 177, 179 (1946).  And for this same reason, the twelfth claim for relief titled "imputed negligence" also must be dismissed as to the county because it too is based on the mistaken assertion that defendant Pamlico County is the employer of the individual defendants.  Id.; (Compl. (DE 1) ¶¶ 214–218; Proposed Am. Compl. (DE 47-1) ¶¶ 225–28).

---

[8]    These claims, of course, will proceed as to the remaining defendants who did not file motion to dismiss.

[9]    As discussed below, the tenth claim will be dismissed as subsumed under the fourteenth claim.  However, the factual allegations in the tenth claim remain pertinent to the wrongful death claim asserted against the county where the tenth claim identifies the precise negligent acts forming the basis for the wrongful death claim.  (See Compl. (DE 1) ¶¶ 205–09, 223–27; Proposed Am. Compl. (DE 47-1) ¶¶ 209–13, 233–37).  Accordingly, the court must identify the negligent acts alleged in the tenth claim that survive the motion to dismiss as to the county so the parties can understand the basis of the wrongful death claim against the county.

[10]    In the proposed amended complaint, plaintiff also asserts this claim against defendant Davis in his official capacity.  As discussed infra, moving defendants do not challenge this claim to the extent it is asserted against this defendant.  (Proposed Am. Compl. (DE 47-1) ¶¶ 3, 209–213; Moving Defs' Resp. (DE 54)).

17

Finally, in the first claim for "injury to a prisoner" under N.C. Gen. Stat. § 126-55, plaintiff alleges defendant Pamlico County "failed to have an adequate number and ratio of detention officers . . . thereby preventing detention officers from complying with [administrative rule setting requirements for safety checks] and PCSO's custody manual [requiring same]." (Compl. (DE 1) ¶ 123(s); Proposed Am. Compl. (DE 47-1) ¶ 125(s). But as set forth above, North Carolina law provides that the sheriff has exclusive responsibility for setting staffing policy and making hiring decisions at the detention center. See N.C. Gen. Stat. § 153A-103; Young, 368 N.C. at 669–70; Knight, 214 F.3d at 552–53. Even assuming defendant Pamlico County provides funding for these positions, plaintiff offers no specific factual allegations suggesting that the county sets policy regarding officer-to-detainee ratios, or refused the sheriff's requests for particular staffing ratios. In light of settled North Carolina law providing the sheriff alone sets these policies, plaintiff must come forward with more than a conclusory allegation that defendant Pamlico County "failed to have an adequate number and ratio of detention officers" to show that the county was responsible for staffing decisions. Nemet Chevrolet, 591 F.3d at 255; (Compl. (DE 1) ¶ 123(s); Proposed Am. Compl. (DE 47-1) ¶ 125(s)).

To summarize, defendant Pamlico County's motion to dismiss is granted in part and denied in part as follows. The motion is denied as to the allegations in the first, ninth, and fourteenth claims premised on the county's alleged failure to enact adequate medical policy governing the detention center. (See Compl. (DE 1) ¶¶ 123(k), (q), 197(a), 208(a), (d), (h); Proposed Am. Compl. (DE 47-1) ¶¶ 125(k), (q), 201(a), 212(a), (d), (h)). The motion is granted in all other respects.

3.    Moving defendants' motion to dismiss

Separately, moving defendants argue that plaintiff's direct claim under the North Carolina Constitution (thirteenth claim) is barred where plaintiff has adequate alternative remedies under

North Carolina law, and that the common law claims for negligence (tenth claim), gross negligence (eleventh claim), and imputed negligence (twelfth claim) are subsumed within the wrongful death claim (fourteenth claim). The court will grant this motion to dismiss in its entirety.

a. North Carolina constitutional claim

Turning first to the constitutional claim, under North Carolina law a plaintiff may bring a claim directly under the North Carolina Constitution ("Corum claim") if the plaintiff lacks adequate state remedies. Corum v. Univ. of N.C., 330 N.C. 761, 782 (1992); see also Wilcox v. City of Asheville, 222 N.C. App. 285, 298 (2012) (collecting cases). To possess an adequate remedy, the plaintiff must "have at least the opportunity to enter the courthouse doors" to present a claim under another label that "provide[s] the possibility of relief under the circumstances." Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 339–40 (2009).

The alternative remedy's likelihood of success is not relevant. As long as the plaintiff has the opportunity to pursue the alternative remedy, the Corum claim is barred. See id. at 355; see also, e.g., Alt v. Parker, 112 N.C. App. 307, 317–18 (1993); Iglesias v. Wolford, 539 F. Supp. 2d 831, 838 (E.D.N.C. 2008) (collecting cases). Moreover, an available remedy against an official in the individual capacity ordinarily will preclude a Corum claim asserted against defendants in their official capacities or an entity employing the defendants because the inquiry focuses on whether there is a remedy for the injury alleged, and not whether a particular defendant is subject to suit. See Washington v. Cline, 385 N.C. 824, 829–30 (2024) (stating "[Corum] applies when one's rights are violated, and the law offers either no remedy or a remedy that is meaningless" and citing approvingly to cases holding that Corum claims are not available when actions against officers in their individual capacities are permitted); Craig, 363 N.C. at 340 (explaining the focus is on whether the law permits a remedy for "constitutional injuries"); Cooper v. Denlinger, 363 N.C.

784, 788–89 (2010) (holding administrative appeal process provided adequate remedy for plaintiff's injury sufficient to preclude <u>Corum</u> claim notwithstanding the fact that plaintiff sought damages against defendants); <u>see also</u> <u>Knibbs v. Momphard</u>, 30 F.4th 200, 231–32 (4th Cir. 2022); <u>Taylor v. Wake Cnty.</u>, 258 N.C. App. 178, 181–89 (2018) (discussing principle in similar circumstances).

Here, plaintiff possesses adequate state remedies where he pursues state wrongful death claim premised on the same underlying injury against defendants in their individual capacities. (Compl. (DE 1) ¶¶ 223–27; Proposed Am. Compl. (DE 47-1) ¶¶ 233–37). While it is true that the individual defendants may assert public official immunity as to this claim, that fact is not relevant to the analysis. As the United States Court of Appeals for the Fourth Circuit has explained, under North Carolina law:

> Public official immunity "does not absolutely, entirely, or automatically preclude" a plaintiff from presenting a claim on the merits. It is instead more akin to "a usual affirmative defense" that can be overcome through evidence of malicious conduct. Accordingly, . . . "it cannot be said that a defendant's assertion of the public official immunity defense entirely precludes suit and renders a plaintiff's common law claims inadequate."

<u>Knibbs</u>, 30 F.4th at 232 (alterations omitted) (quoting <u>Wilcox</u>, 222 N.C. App. at 237); <u>see also</u> <u>Washington</u>, 385 N.C. at 829–30 (citing <u>Wilcox</u> approvingly and indicating that availability of suit against individual officers precludes <u>Corum</u> claim).

Plaintiff also argues that this issue cannot be resolved on the pleadings alone, and that he should be allowed to conduct discovery on the scope of defendants' claims for immunity. Plaintiff relies on the North Carolina Supreme Court's decision in <u>Craig</u>, in which that court permitted <u>Corum</u> claim to proceed where "sovereign immunity will have operated to bar the [common law claim and thus] redress of the violation of [plaintiff's] constitutional rights." 363 N.C. at 340–41. <u>Craig</u>, however, is distinguishable where in that case sovereign immunity indisputably barred the

20

only remaining common law claim against the only remaining defendant, thereby leaving plaintiff without a remedy absent recognition of the Corum claim.  See id. at 339–42; see also Knibbs, 30 F.4th at 232–33 (distinguishing Craig on this same ground).

Here, the individual officers are not entitled to sovereign or governmental immunity as to the state law individual capacity claims asserted against them.  See Estate of Graham v. Lambert, 385 N.C. 644, 654 (2024) ("[A] defendant sued in his individual capacity does not enjoy sovereign or governmental immunity.").  And for the reasons explained above, the defense of public official immunity does not render the claim against the individual officers inadequate such that a Corum claim must be recognized.  See Knibbs, 30 F.4th at 232.  Thus, as a matter of law, plaintiff's claim for wrongful death against the individual officers provides an adequate remedy for plaintiff's injury.  Washington, 385 N.C. at 829–30.

Related to the issue of the adequacy of alternative remedies, the North Carolina Supreme Court has emphasized that a plaintiff may bring distinct Corum claims in a single suit, based on distinct constitutional injuries.  Askew v. City of Kinston, 386 N.C. 286, 293–94 (2024).  In such cases, "courts may not lump those claims together" because "the scope and nature of the constitutional wrong dictate whether existing modes of redress apply to the facts alleged."  Id. at 294.  Here, plaintiff does not argue that the court should consider his state constitutional claims separately under Askew.  And while plaintiff does cite to distinct constitutional provisions in the complaint, he makes no effort in either the complaint or briefing on the instant motions to explain how defendants violated Gonzalez's right to equal protection under the law, procedural due process, or the prohibition on general warrants.  (See Compl. (DE 1) ¶ 220 (citing to N.C. Const., art.1, §§ 1, 19, 20, 27); Proposed Am. Compl. (DE 47-1) ¶ 230 (same)).  Instead, plaintiff seeks redress for essentially one constitutional injury:  defendants' alleged failure to respond adequately

21

to Gonzalez's mental health needs, resulting in his pain and suffering and ultimate suicide. See Compl. (DE 1) ¶¶ 116–21; Proposed Am. Compl. (DE 47-1) ¶¶ 118–23). Plaintiff fails to explain how his allegations give rise to distinct constitutional injuries.

In sum, plaintiff has adequate alternative remedies for his North Carolina constitutional claim. As a result, he is not permitted to pursue separate Corum claim in this action and the thirteenth claim must be dismissed.

### b. Common law claims

Finally, moving defendants argue that the common law tort claims (tenth, eleventh, and twelfth claims) are subsumed under the wrongful death claim. North Carolina's wrongful death statute "provides a remedy to the personal representative of a decedent's estate when the decedent would have otherwise been entitled to damages caused by another person's 'wrongful act, neglect[,] or default [that caused the death]." Knibbs, 30 F.4th at 226 (quoting N.C. Gen. Stat. § 28A-18-2(a)). "This statutory right supersedes all common law claims that could have been asserted" related to the death. See id.; see also State Auto Ins. Co. v. Blind, 185 N.C. App. 707, 711–12 (2007) (holding that "any common law claim which is now encompassed by the wrongful death statute must be asserted under that statute. This means that when the elements of damage which a plaintiff seeks to recover are recoverable under [the wrongful death statute], a wrongful death action is the only action that the plaintiff may sustain to recover those damages").

Wrongful death claims are distinct from survivorship actions brought after death for injuries sustained before death, but where the injuries did not cause the death. See N.C. Gen. Stat. § 28A-18-1; see also Alston v. Britthaven, Inc., 177 N.C. App. 330, 333, 339–40 (1973).[11]

---

[11]     One practical effect of this distinction is that if the personal representative prevails in a survivorship action the recovery becomes part of the estate and thereby subject to the decedent's creditors. For successful claims under the wrongful death statute, recovery flows directly to the decedent's heirs. Compare N.C. Gen. Stat. § 28A-18-1(a) with N.C. Gen. Stat. § 28A-18-2(a); see also Bowen v. Constructors Equip. Rental Co., 283 N.C. 395, 421 (1973);

Although both survivorship and wrongful death claims may be brought for injuries received by the decedent prior to death, where the tortfeasor's conduct causes injuries that in turn cause the decedent's death the survivorship action is moot and only a wrongful death claim may proceed. See Bolick v. Southern Ry. Co., 138 N.C. 370, 50 S.E. 689, 690 (1905); Blind, 185 N.C. App. at 712–13.

Plaintiff argues that he is pleading alternatively both survivorship claims and wrongful death claims, and thus his common law tort claims should not be subsumed wholly under the wrongful death claim. (See Pl's Resp. (DE 51) at 11–14). But this would require allegations showing that defendants injured Gonzalez in a manner that did not cause the death. See Bolick, 50 S.E. at 690; Blind, 185 N.C. App. at 712 (permitting alternative pleading of wrongful death and survivorship claims only if plaintiff alleges "that the defendant's negligence caused [injury] but that the decedent died of another cause"). Plaintiff points to no allegations in the complaint showing Gonzalez died of anything other than suicide, or that defendants' caused injuries unrelated to the ultimate cause of death. (See generally Compl. (DE 1); Proposed Am. Compl. (DE 47-1)). In the context presented here, survivorship claims are subsumed under the wrongful death statute because "no alternative explanation exists as to the cause of death" and the entire basis of the complaint is that defendants' alleged negligence resulted in plaintiff's suicide. See Blind, 185 N.C. App. at 712; Alston, 177 N.C. App. at 340.[12]

Plaintiff also states that he is pursuing damages for pain and suffering occurring before the

---

Blind, 185 N.C. App. At 713. In addition, the statute of limitations for survivorship claims is three years whereas the limitations period is two years in the case of wrongful death claims. Compare N.C. Gen. Stat. § 1-53(4) (statute of limitations two years for wrongful death claims) with N.C. Gen. Stat. § 1-52(16) (three years for survivorship claims); Blind, 185 N.C. App. at 713.

[12]     Although the Supreme Court of North Carolina has not addressed this precise issue, the court predicts it would adopt the rule from these cases in light of Bolick, which carefully distinguished survivorship and wrongful death claims on the basis of whether the defendants' alleged negligence caused the death. See 50 S.E. at 689–90; see

death independent of any claim for these damages related to the death itself. (Pl's Resp. (DE 50) at 14). He argues that the jury could award damages for pain and suffering occurring before Gonzalez's death even if it determines that defendants' actions did not cause the death. (Id.).

This argument misunderstands the distinction between survivorship claims and wrongful death claims. As stated above, plaintiff can obtain damages for pain and suffering occurring before the death under both the survivorship and wrongful death statutes. See N.C. Gen. Stat. § 28A-18-2(b)(2); N.C. Gen. Stat. § 28A-18-1; Blind, 187 N.C. App. at 712. The common law claims are subsumed under the wrongful death statutes where the alleged negligence causes injuries that "unquestionably result in the decedent's death." Blind, 187 N.C. App. at 713. That is the case here. Under plaintiff's theory, the failure to provide mental health treatment and suicide precautions caused plaintiff's mental health to deteriorate, and that injury alone allegedly caused the death. (See generally Compl. (DE 1); Proposed Am. Compl. (DE 47-1)). The fact that the jury may find that defendants did not cause the death does not entitle plaintiff to plead alternative survivorship claims on the basis of the same negligence that plaintiff maintains caused the death. See Blind, 185 N.C. App. at 712 ("[W]hen the elements of damage which a plaintiff seeks to recover are recoverable under [the wrongful death statute], a wrongful death action is the only action that the plaintiff may sustain to recover those damages"); Alston, 177 N.C. App. at 340. Indeed, that risk is present in every wrongful death action, and permitting both survivorship and wrongful death claims to proceed in the alternative on this basis would jettison the rule that survivorship claims are subsumed under the wrongful death statute when there is one undisputed cause of death. See Bolick, 50 S.E. at 690; Blind, 187 N.C. App. at 712–13.

Plaintiff's reliance on Alston to support his theory is misplaced. It is true that in Alston

also Knibbs, 30 F.4th at 232 (stating federal court should disregard state court of appeals decision only if "convinced by other persuasive data indicating that the Supreme Court of North Carolina would reject those holdings").

the state court of appeals determined the trial court erred by failing to submit both survivorship and wrongful death claims to the jury. See 177 N.C. App. at 341. But that was because the evidence and pleadings in the case suggested alternative explanations for the death, and the plaintiff pursued alternative survivorship claims for pain and suffering occurring before the death caused by negligence that may not have resulted in death. Id. at 339–40. As the Alston court explained:

> It is vital to distinguish this case from those where no alternate explanation exists as to the cause of death. In such cases, pursuant to the 1969 statutory changes, the survivorship claims included in the wrongful death statute, which are pain and suffering, medical costs, and punitive damages, may be pursued as part of a wrongful death action. However, where a viable alternate explanation, other than defendant's negligence or wrongful act, exists for the cause of decedent's death, but the evidence also indicates defendant's negligence or wrongful act caused the decedent pain and suffering and/or medical expenses prior to his death, a plaintiff has the right to present those pre-death claims to a jury separately from the wrongful death claim. Otherwise, the plaintiff might be prevented from even a single recovery for those injuries as they would never reach the jury for consideration.

Id. at 340. Here, there is no viable alternative explanation for Gonzalez's death. Plaintiff expressly pleads that it was suicide. (Compl. (DE 1) ¶ 114; Proposed Am. Compl. (DE 47-1) ¶ 116). The fact that Gonzalez's mental health deteriorated and he endured pain and suffering prior to the suicide does not give rise to separate survivorship action for these damages because this same injury indisputably caused the death. See Bolick, 50 S.E. at 690; Blind, 187 N.C. App. at 712–13; Alston, 177 N.C. App. at 340; (See, e.g., Compl. (DE 1) ¶¶ 82, 85, 98–102, 108, 117, 155–57, 159, 170; Proposed Am. Compl. (DE 47-1) ¶¶ 84, 87, 100–104, 110, 119, 157–59, 161, 172).

Finally, plaintiff suggests that he can plead separate survivorship claims because he alleges more than one negligent act contributed to Gonzalez's suicide and mental pain and suffering. (See Pl's Resp. (DE 51) at 11–14). Plaintiff relies primarily on Blind, in which the state court of appeals explained: "we hold that when a single negligent act of the defendant causes a decedent's injuries

and those injuries unquestionably result in the decedent's death, the plaintiff's remedy for the decedent's pain and suffering and medical expenses lies only in the wrongful death claim." 185 N.C. App. at 713. <u>Blind</u> involved "one single act" of negligence (a vehicular crash), and thus the reference to same in this passage reflects the facts of that case. <u>See</u> <u>id.</u> at 708–09. But nothing in <u>Blind</u> suggests that the distinction between survivorship claims and wrongful death claims turns on whether one single negligent act caused the death. <u>See</u> <u>id.</u> As discussed above, the survivorship and wrongful death claims can be pursued in the alternative when "the . . . negligent acts" plausibly may have caused injuries that did not result in death. <u>See</u> <u>id.</u> at 712–13. That is not the case here for the reasons explained above.

In sum, moving defendants' motion to dismiss is granted, and the court dismisses plaintiff's direct claim under the North Carolina Constitution and the common law claims (tenth, eleventh, twelfth, and thirteenth claims). The common law claims are subsumed into the wrongful death claims, and the underlying negligent acts for the wrongful death claim are the acts described in the common law claims, to the extent otherwise allowed to proceed as set forth herein.

4.      Motion to Amend

As noted, plaintiff moves for leave to file amended complaint. Moving defendants[13] oppose the motion only to the extent that the re-pleaded claims fail for the reasons stated in the instant motions to dismiss. (Moving Defs' Resp. (DE 54) at 2–3). Having resolved those motions herein, the motion to amend is granted as to the claims that survive the instant motions to dismiss, and denied as to the remaining claims dismissed pursuant to this order.

---

[13]      Remaining defendants did not respond to the motion to amend.

## CONCLUSION

Based on the foregoing, defendant Pamlico County Sheriff's Office's motion to dismiss (DE 35) is GRANTED and all claims asserted against this defendant are dismissed with prejudice. Defendant Pamlico County's motion to dismiss (DE 37) is GRANTED in part and DENIED in part on the terms set forth above. The surviving claims against defendant Pamlico County are the first, ninth, and fourteenth claims to the extent predicated on the county's allegedly deficient medical plan, and all remaining claims against this defendant are dismissed with prejudice. Moving defendants' motion to dismiss (DE 39) is GRANTED in its entirety, and the tenth, eleventh, twelfth, and thirteenth claims are DISMISSED.

Plaintiff's motion to amend (DE 47) is GRANTED in part and DENIED in part. The motion is granted as to all claims or portions thereof not dismissed herein. The motion is denied as to all claims, or portions thereof, dismissed pursuant to this order. Plaintiff is DIRECTED to file amended complaint that complies with the rulings herein within **14 days** of entry of this order. The court will enter separate order initiating conference activities under Federal Rule of Civil Procedure 26 after defendants file answers to the amended complaint.

SO ORDERED, this the 13th day of March, 2025.

LOUISE W. FLANAGAN
United States District Judge